IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | | |
|---|---|---|
| LEON JOHNSON, | ) | |
| Plaintiff, | ) | Civil Action No. 7:22-cv-00343 |
| | ) | |
| v. | ) | |
| | ) | By: Elizabeth K. Dillon |
| S. FULLER, *et al.*, | ) | United States District Judge |
| Defendants. | ) | |

**MEMORANDUM OPINION**

Plaintiff Leon Johnson, a Virginia inmate proceeding *pro se*, filed a 42 U.S.C. § 1983 complaint containing misjoined claims and defendants, and this court severed her complaint into five separate actions.[1] This case involves her claim that two defendants—S. Fuller and R. White—failed to provide her adequate mental health treatment, in violation of the Eighth Amendment.

By memorandum opinion and order entered July 21, 2022, the court sua sponte dismissed Johnson's complaint. (Dkt. Nos. 5, 6.) The court dismissed her complaint without prejudice, however, recognizing that Johnson might be able to state a claim with additional factual matter. (Mem. Op. 2, Dkt. No. 5.)

In its order, the court directed:

> If Johnson believes she can remedy the deficiencies noted by the court and if she so chooses, she may file a motion to reopen the action, along with an amended complaint, within 30 days of the entry of this order. The amended complaint should name as a defendant each person that she believes violated her constitutional rights with regard to the denial of mental health treatment and clearly state what each defendant did or failed to do that violated her federal rights. .. . [T]he amended complaint must be a new pleading complete in all respects, which stands by itself without reference to any earlier-filed complaint, documents, or

---

[1] According to the complaint, Johnson is a transgender woman, and she refers to herself using feminine pronouns. The court does so also.

attachments.

(Order 1, Dkt. No. 6.)

Within that thirty-day period, Johnson filed a single document titled as a "Motion for Leave to File An Amended Complaint and Reconsideration." (Dkt. Nos. 7, 8.) It has been docketed both as a motion for reconsideration and as a motion to amend.

Although the document contains allegations that would presumably be included in any amended complaint, the document itself does not contain all the sections that a complaint typically would. For example, it does not list specific defendants as parties, ask for any particular relief, or specifically list any claims. Thus, it fails to comply with the court's instructions to submit an amended complaint "complete in all respects." Regardless, the court will consider the document as a motion to reopen and a request to supplement her original complaint with the additional allegations it contains.

For the reasons discussed in this opinion, the court will grant the motion to reopen for the limited purpose of reviewing Johnson's supplemental allegations. Upon review of them, however, the court concludes that Johnson still fails to state a violation of her Eighth Amendment rights by Fuller or White.

I.  FACTUAL BACKGROUND

Although Johnson's wording does not always make sense, she appears to allege as follows:

- In June and July 2022, she was experiencing mental health problems as a result of her transgender status and because other inmates and personnel were using "disrespectful phraseology" to refer to her. She says generally that Fuller and White failed to respond reasonably to her complaints. (Mot. ¶ 12, Dkt. No. 7.)

- She states twice (although she does not indicate the dates of treatment) that she was under the care of a physician, who had prescribed her lithium and Effexor.[2] (*Id.* ¶¶ 2, 11.)

- She identifies two incidents on separate dates in July 2021, in which she appears to fault Fuller (in one) and White (in the other) for failing to refer her for mental health treatment. On the first occasion, on July 20, 2021, White did rounds and "Johnson inform[ed] White face to face about seeing mental health." Johnson states that she "did not refuse the unwanted medical or mental health care." She complains that White walked away from Johnson and "did not determine whether he was or refuse there was no disruptive influence or effective administration of the prison system. [sic]" (*Id.* ¶ 4.)

- She describes a similar interaction with Fuller four days later. In response to Johnson's request, Fuller responded that "I'm gonna . . . let them know," presumably a reference to the mental health departments. (*Id.* ¶ 5.) Johnson claims Fuller "never did." (*Id.*)

Johnson also alleges, although without supporting detail, that Fuller and White "knew Johnson was experienc[ing] depression of thinking about harming herself or killing herself from the emotional depression" and that they "knew Johnson was a harm to herself" and they failed to respond reasonably. (*Id.* ¶¶ 11, 12.)[3]

---

[2] Lithium is the generic name for a drug that is "a mood stabilizer that is used to treat or control the manic episodes of bipolar disorder." *Lithium*, www.drugs.com/lithium.html (last updated Mar. 23, 2022). Effexor is a brand-name for the generic venlafaxine hydrochloride and "is an antidepressant belonging to a group of drugs called selective serotonin and nonrepinephrine reuptake inhibitors (SSNRIs)." *Effexor*, www.drugs.com/effexor.html (Last updated Dec. 1, 2021). It is "used in adults to treat major depressive disorder, generalized anxiety disorder, social anxiety disorder, and panic disorder." *Id.*

[3] Elsewhere in her motion, Johnson claims that she has "the right not to show the courts or the Attorney General mental health information unless court order under the Eighth Amendment of the HIPAA. [sic]" (Mot. ¶ 8.) It is unclear whether she is asserting this as a separate claim. (*See* Mot. ¶ 13 (saying that Fuller and White "did not protect Johnson['s] right to have her sensitive medical or mental health information kept private per [VDOC Operating Procedure] 730.6").)

To the extent she is arguing that she does not have to provide mental health information *in this case*, she is incorrect. A claim about the denial of mental health care necessarily puts one's mental health in issue and discovery of records related to the plaintiff's mental health is appropriate. *See Vannoy v. Fed. Reserve Bank of Richmond*, 2014 WL 2601765, at *4 (E.D. Va. June 10, 2014) (explaining that defendants are entitled to discovery of a plaintiff's medical records where the plaintiff places his mental condition at issue by seeking compensatory damages for emotional distress, pain and suffering, or mental anguish). Moreover, to the extent she is claiming that Fuller or White disclosed medical information, that fails to state a constitutional violation or a valid claim under HIPAA. *Cf. Riccio v. Cnty. of Fairfax*, 907 F.2d 1459, 1469 (4th Cir. 1990) (holding that a violation of state-created rules does not constitute a due process violation); *Estes v. Sw. Va. Reg'l Jail Authorities-Duffield Virginia*, No. 7:19CV00400, 2020 WL 515878, at *1 (W.D. Va. Jan. 31, 2020) (holding that HIPAA did not create a private right of action and collecting authority).

3

The court again reviews Johnson's claims pursuant to 28 U.S.C. § 1915A(a). In doing so, it considers her supplemental allegations. Even with the additional allegations, however, Johnson fails to state an Eighth Amendment claim against either Fuller or White.

## II. DISCUSSION

As the court explained in its prior memorandum opinion, Johnson's Eighth Amendment claim requires her to show that (1) she has "serious medical need," which is a medical condition that has been "diagnosed by a physician as mandating treatment or is so obvious that even a lay person would easily recognize the necessity for a doctor's attention" and (2) the defendant "had actual knowledge of the plaintiff's serious medical needs and the related risks, but nevertheless disregarded them." *Gordon v. Schilling*, 937 F.3d 348, 356–57 (4th Cir. 2019); *Estelle v. Gamble*, 429 U.S. 97, 105 (1976). The first component is an objective inquiry, and the second is subjective. *Heyer v. U.S. Bureau of Prisons*, 849 F.3d 202, 209–10 (4th Cir. 2017).

To establish the subjective element, Johnson must present facts to demonstrate that the defendant had actual knowledge of an objectively serious medical need and disregarded that need. *Farmer v. Brennan*, 511 U.S. 825, 837 (1994); *see also Rish v. Johnson*, 131 F.3d 1092, 1096 (4th Cir. 1997). To qualify as deliberate indifference, the defendant's conduct must be "so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness." *Miltier v. Beorn*, 896 F.2d 848, 851 (4th Cir. 1990), *overruled in part on other grounds by Farmer*, 511 U.S. at 837.

Although Johnson still has failed to identify with specificity any mental health diagnoses, she alleges that she was depressed and suicidal or likely to self-harm. The court assumes for purposes of this opinion she alleges a sufficiently serious medical need to satisfy the objective component of her claim.

4

Nonetheless, Johnson still cannot establish that either Fuller or White was deliberately indifferent to her serious medical need.  First of all, Johnson's allegations simply do not describe conduct by either Fuller or White that is "so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness."  *Miltier*, 896 F.2d at 851.

It appears that Fuller and White are not medical or mental health care providers, but correctional officials.  And according to her own allegations, Johnson was receiving mental health treatment from a physician, to include being prescribed two medications.  At most, she alleges that she reported her mental health concerns to Fuller and White on one occasion each, and that they either ignored her request for help or failed to pass on her request for help.  She does not allege that she was in any particular, specific, or immediate danger at the times she spoke to Fuller and White, nor does she allege that she specifically told either of them she was in immediate danger of suicide or self-harm.  She does not allege that she actually took steps to self-harm or attempt to commit suicide on the day of these alleged "denials" or on any of the following days.  She also does not allege that any harm came from any delay in treatment.  *Cf. Formica v. Aylor*, 739 F. App'x 745, 755, 758 (4th Cir. 2018) (assuming, based on prior unpublished circuit decisions, that the plaintiff must show that a delay in treatment resulted in actual harm, such as a "marked" exacerbation of the medical condition or "frequent complaints of severe pain," and noting that such a requirement is "consistent . . . with the precedent of other courts of appeals").

Furthermore, when a prisoner is under the care of a medical professional (such as Dr. McDuffie here), officials may rely on the judgment of that medical professional as to what treatment the prisoner needs.  The officials "cannot be liable for the medical staff's diagnostic decisions" and "cannot substitute their judgment for a medical professional's prescription." *Meloy v. Bachmeier*, 302 F.3d 845, 849 (8th Cir. 2002); *Miltier*, 896 F.2d at 854 (4th Cir. 1990)

5

(explaining that non-medical staff at a prison are entitled to rely on the opinion of medical staff as to whether the plaintiff needed additional medical care and/or testing).

Put differently, a non-medical provider generally cannot be held liable for a failure to provide an inmate medical treatment where, as here, that inmate is under the care of a physician for the ailment or injury. *Miltier*, 896 F.2d at 854 (holding that non-medical personnel are entitled to rely on the professional judgment of medical practitioners to determine appropriate treatment for a patient); *see also Iko v. Shreve*, 535 F.3d 225, 242 (4th Cir. 2008) (quoting *Spruill v. Gillis*, 372 F.3d 218, 236 (3d Cir. 2004)) (holding "[i]f a prisoner is under the care of medical experts . . ., a nonmedical prison official will generally be justified in believing that the prisoner is in capable hands.'"). Thus, a non-physician is not "deliberately indifferent simply because [he] failed to respond directly to the medical complaints of a prisoner who was already being treated by the prison doctor." *Pearson v. Prison Health Serv.*, 850 F.3d 526, 539 (3d Cir. 2017).

For all of these reasons, Johnson has not stated a valid Eighth Amendment claim against either Fuller or White.

## III. CONCLUSION

As discussed herein, Johnson's complaint fails to state a constitutional deprivation actionable under § 1983, against either Fuller or White, even considering Johnson's proposed supplemental allegations. For this reason, the case will be dismissed, pursuant to 28 U.S.C. § 1915A(b)(1), for failing to state a claim upon which relief may be granted. Furthermore, because Johnson has now been given an opportunity to correct the factual deficiencies after the court specifically pointed them out—and still has failed to do so—the case will be dismissed with prejudice.

An appropriate order will be entered.

Entered: December 6, 2022.

/s/ Elizabeth K. Dillon
Elizabeth K. Dillon
United States District Judge